IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CLARA SKINNER                                                                                          PLAINTIFF

VS.                                              CASE NO. 08-CV-1044

LIFE INSURANCE COMPANY
OF NORTH AMERICA and
LOCKHEED MARTIN CORPORATION
LONG TERM DISABILITY PLAN                                                              DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Clara Skinner filed a complaint against Defendants Life Insurance Company of North America ("LINA") and Lockheed Martin Corporation Long Term Disability Plan[1] pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that LINA breached its fiduciary duty to Plaintiff when it terminated her long term disability ("LTD") benefits. This matter is now before the Court on Plaintiff's Motion for Summary Judgment. (Doc. 14). Defendants have responded. (Doc. 18). Plaintiff has filed a reply to Defendants' response. (Doc. 21). The Court finds the matter ripe for consideration.

BACKGROUND

Plaintiff brings this case before the Court to seek review of LINA's decision to terminate her LTD benefits under the terms of the Lockheed Martin Corporation Group Benefits Plan ("Disability Plan"). Plaintiff was an employee of Lockheed Martin and was insured under a long term disability

---

[1] Plaintiff identified Separate Defendant as Lockheed Martin Long Term Disability Plan in the Complaint; however, in its Answer, Separate Defendant noted that it was incorrectly identified and that its correct name is Lockheed Martin Corporation Group Benefits Plan. Thus, the Court will refer to Separate Defendant as Lockheed Martin Corporation Group Benefits Plan.

plan administered by LINA.  In November 2004, Plaintiff fell at work and suffered a fractured hip and minor injuries to her arm.  These injuries caused Plaintiff to be unable to perform the material duties of her job.  Plaintiff filed an application for LTD benefits, and her claim was approved. Plaintiff also started receiving social security benefits in May 2005.[2]  LINA made disability payments to Plaintiff until May 28, 2007, at which time LINA determined that Plaintiff no longer qualified for benefits under the plan.

> I. The Disability Plan

LINA is the insurer of the Disability Plan and also serves as its claims administrator.  As the claims administrator, LINA had the discretion to interpret the terms of the plan, decide questions of eligibility, and make any related findings of fact.  The Disability Plan defines disability as follows:

> For purposes of coverage under the Policy, you are Disabled if, because of Injury or Sickness, you are unable to perform each and every material duty of your regular occupation.  After Monthly Benefits have been payable for 24 months, you are Disabled if your Injury or Sickness makes you unable to perform all the material duties of any occupation for which you may reasonably become qualified based on education, training or experience.

There is no dispute that Plaintiff was disabled under the Disability Plan from May 28, 2005, until May 28, 2007.  However, LINA decided that after May 28, 2007, Planitiff was no longer disabled under the Plan because she could perform some occupations with her limitations, which meant that Planitiff no longer qualified for disability benefits under the Disability Plan.

> II. Plaintiff's Medical History

The fall at work caused Plaintiff to suffer a fractured hip.  In November, 2004, Dr. C. E.

---

[2]A LINA representative referred Planitiff to Allsup Inc., a private social security disability claims services, for the purpose of seeking social security disability benefits, which would serve as an offset under the Disability Plan.

Soeller performed a procedure on Plaintiff where screws were inserted to correct her hip fracture. However, these screws backed out, and in March 2005, Dr. Soeller performed a surgery to exchange the hardware used in the original hip procedure. Plaintiff saw Dr. C. Lowry Barnes in June 2005 for the purpose of obtaining a second medical opinion prior to her approval of LTD benefits. Dr. Barnes noted that Plaintiff had moderate pain on a daily basis and that his impression was that Plaintiff would need a total hip replacement.

In August 2005, Plaintiff had a total hip replacement. On August 22, 2005, Plaintiff saw Dr. Luter for the purpose of obtaining a rating. Dr. Luter noted that Plaintiff had a "great deal" of pain in her left leg but that she had just had hip replacement surgery a week before. Dr. Luter prescribed her Percocet for her pain.

LINA requested a functional capacity evaluation ("FCE"), and Plaintiff attended the evaluation on January 16, 2007. Clint Rhodes, a physical therapist and independent medical examiner, performed the evaluation. He noted that Planitiff drove herself to the clinic, did not require an assistive device when walking, and exhibited a mild limp. Planitiff's initial blood pressure was 182/100 with a pulse rate of 76. Mr. Rhodes, following FCE protocol, called Planitiff's treating physician, Dr. Mosley, for advice on whether Mr. Rhodes should continue evaluating Plaintiff. Dr. Mosley advised Mr. Rhodes that he could continue with the evaluation as long as Plaintiff did not exhibit any signs of distress.

Mr. Rhodes noted that, at some time during the evaluation, Plaintiff took her blood pressure medication, and her blood pressure dropped to 154/102 approximately one hour after taking the medication. Mr. Rhodes allowed Plaintiff "plenty of rest" between activities to prevent further elevation of her blood pressure. Plaintiff complained that she fatigued after most prolonged

3

activities, and she exhibited increased pain during repetitive activities, especially with trunk side bending and squatting. Mr. Rhodes noted that Plaintiff did not exhibit any significant range of motion limitations in her wrists. Plaintiff exhibited mild to moderate limitations on her cervical and lumbar range of motion. Mr. Rhodes found that Plaintiff should be able to lift thirty-six pounds occasionally, fourteen pounds frequently, and seven pounds constantly. Mr. Rhodes limited some of the protocols and did not perform the following protocols because of Plaintiff's high blood pressure: cardiovascular step test, overhead lift, push/pull, static back test, and treadmill test. After the FCE, it was concluded that Plaintiff has the capacity to perform occupations at least in the sedentary and light categories. A few months after the FCE, LINA terminated Plaintiff's LTD benefits.

### III. Claim History

LINA began making LTD benefits payments to Plaintiff on May 28, 2005. Plaintiff also began receiving Social Security benefits at this time. By letter dated October 25, 2006, LINA explained to Plaintiff that, because her claim was approaching the twenty-four month point, it would be investigating her condition to determine if she was eligible for continuing benefits. LINA also sent a letter, dated October 25, 2006, to Plaintiff's treating physician, Dr. Mosley, in which LINA requested information about Plaintiff's condition.[3]

Per LINA's request, a FCE was performed on Plaintiff in January 2007. In February 2007, Plaintiff also had a Transferable Skills Analysis done. Planitiff's work history included quality

---

[3]LINA did not receive any information from Dr. Mosley until October 27, 2007, when he completed a Physician's Statement of Disability, in which he noted the following. "Patient is totally disabled— has been disabled from 11/04 for an indefinite time. Please contact our office for any medical records needed to complete this disability request." He also listed diagnoses of fibromyalgia, hyperlipidemia (an elevation of lipids in the bloodstream), and hypertension.

inspector and inventory clerk. Her transferable skills included "planning or directing work of others; gathering, organizing, and recording numerical or other information accurately; analyzing and classifying documents following established procedures; recognizing errors in printed copy; adjusting to work that is routine or repetitive; and routing or distributing information or records." Based on Plaintiff's transferable skills, it was determined that Plaintiff could perform the following three occupations with her limitations: shipping order clerk, shipping/weigher clerk, and dispatcher. These positions were determined based on Plaintiff's skills, education, work history, and wage requirement, which was $8.40 an hour.

According to LINA, after examining the results of the FCE and reviewing the administrative record and Plaintiff's medical records, it concluded that Plaintiff was capable of performing some work; therefore, she was not disabled as defined by the Disability Plan.[4] Accordingly, LINA decided to terminate Plaintiff's LTD benefits as of May 28, 2007, twenty-four months after it initially found that she was disabled as defined by the Disability Plan. Plaintiff filed an appeal with LINA, and her appeal was ultimately denied. Plaintiff filed her Complaint in the Circuit Court of Ouachita County, Arkansas, in May 2008. Defendants then removed the case to this Court. The case is now before us on Plaintiff's Motion for Summary Judgment.

## STANDARD OF REVIEW

Generally, when a disability plan governed by ERISA gives the plan administrator discretionary authority to determine eligibility for benefits, the Court reviews the administrator's decision for abuse of discretion. *Firestone Tire & Rubber Co. v. Branch,* 489 U.S. 101, 115, 109

---

[4]The Disability Plan provides that Plaintiff is disabled if, after monthly benefits have been payable for twenty-four months, she is unable to perform all the material duties of *any* occupation for which she is qualified based on education, training, or experience.

S. Ct. 984 (1989). The Court will only reverse the plan administrator's decision if it is arbitrary and capricious. *Groves v. Metropolitan Life Ins. Co.,* 438 F.3d 872, 874 (8th Cir. 2006). The Eighth Circuit has stated that "[w]hen a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." *Ratliff v. Jefferson Pilot Fin. Ins. Co.,* 489 F.3d 343, 348 (8th Cir. 2007). Substantial evidence is defined as "more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.,* 220 F.3d 944, 949 (8th Cir. 2000). The Eighth Circuit has also stated that "[t]he discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made." *Ratliff,* 489 F.3d at 348. The Court may consider the quantity and quality of evidence before a plan administrator and the Court should be hesitant to interfere with the administration of an ERISA plan. *Groves,* 438 F.3d at 875.

DISCUSSION

The issue before the Court is whether LINA abused its discretion when it denied Plaintiff's appeal based on its determination that she was not disabled as defined by the Disability Plan.

I. Procedural Irregularities

As an initial matter, Plaintiff asserts in her brief that "procedural irregularities abound" that were of financial benefit to LINA. However, the Court cannot ascertain from Plaintiff's arguments the procedural irregularities to which she generally refers. Plaintiff claims that LINA disregarded the opinion of her treating physicians; failed to consider that she was granted Social Security disability benefits; and relied on an unreliable FCE. However, these contentions reflect substantive disagreements with LINA's analysis of the administrative record, not procedural irregularities. *See Weidner v. Federal Express Corp.*, 492 F.3d 925, 928 (8th Cir. 2007). Thus, the Court cannot

conclude that any procedural irregularities exist here. The Court will now move on to analyze Plaintiff's substantive arguments regarding LINA's analysis of the administrative record and the decisions LINA made based upon this record.

### II. Abuse of Discretion

Plaintiff argues that LINA abused its discretion in deciding to discontinue her LTD benefits. Specifically, Plaintiff asserts that LINA acted arbitrarily by ignoring the medical and vocational evidence provided by Plaintiff and her treating physicians and relying on an unreliable FCE.

Plaintiff contends that LINA should have given the opinion of her treating physician, Dr. Mosley, more weight.[5] Dr. Mosley opined that Plaintiff was totally disabled for an indefinite period of time, and Planitiff asserts that this opinion supports the conclusion that she cannot perform all the material duties of any occupation. The Supreme Court has recognized that treating physicians are not automatically entitled to special weight in disability determinations under ERISA:

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965 (2003).

Here, LINA was not required to credit Dr. Mosley's opinion over other evidence relevant to Plaintiff's condition. Dr. Mosley did not provide LINA with any objective support for his opinion

---

[5]Plaintiff's use of the plural term "treating physicians" suggests that Plaintiff is also referring to the surgeon who performed the hip procedures and other doctors who saw Plaintiff shortly after her surgery in 2005. However, the Court notes that these physicians did not offer their opinions as to whether Plaintiff was disabled in late 2006 or 2007 when LINA was reviewing Plaintiff's status as disabled. Thus, the Court will focus on Dr. Mosley's opinion, who was identified as Plaintiff's treating physician in late 2006 and 2007.

that Plaintiff was totally disabled. The results of the FCE provided that Plaintiff could perform work in the sedentary and light categories, and the transferrable skills analysis identified three categories of jobs that Plaintiff could perform with her limitations. Plaintiff indicated in her disability questionnaire that she regularly cooks, cleans, shops, and does laundry. She further stated that she currently sits for two to twelve hours per day and does not require assistance from any special equipment, such as a wheelchair. Other than the opinion of her treating physician, the evidence in the record supports the finding that Plaintiff is able to perform work in the sedentary and light categories.

      Plaintiff asserts that little or no weight should be given to the FCE, because Plaintiff had high blood pressure when she was evaluated, which caused the medical examiner to modify or omit some of the routine tests. Mr. Rhodes, the examiner, informed Dr. Mosley of Plaintiff's elevated blood pressure, and Dr. Mosley indicated that Mr. Rhodes could continue his evaluation of Plaintiff as long as she showed no signs of distress. Mr. Rhodes noted that he allowed adequate periods of rest between the tests to prevent further elevation of Plaintiff's blood pressure. Further, Mr. Rhodes noted that Plaintiff's blood pressure lowered after she took her blood pressure medicine. Even with elevated blood pressure and without the results of the omitted tests, the results of Plaintiff's evaluation indicated that she could perform sedentary to light work. Accordingly, the Court cannot find that LINA abused its discretion when it relied on the FCE along with other evidence to support its conclusion that Plaintiff was not disabled within the definition of the Disability Plan.

      Plaintiff argues that the fact that Plaintiff was granted social security benefits while having been denied LTD benefits by LINA supports her argument that LINA abused its discretion in denying her disability benefits. The Court notes that this places Plaintiff in an unusual position;

however, the reasons for this unusual position appear to be the product of discretionary judgment applied to a record containing conflicting opinions as well as the result of the different standards governing social security and ERISA determinations.  For example, the Social Security Administration ("SSA") adheres to the treating physician rule, which means that the SSA will generally give more weight to treating physician's opinions; whereas, the treating physician rule does not apply to ERISA determinations.  *Nord*, 538 U.S. at 829, 123 S. Ct. at 1969.  Moreover, an "ERISA plan administrator or fiduciary generally is not bound by an SSA determination that a plan participant is disabled even when the plan's definition of disabled is similar tot he definition the SSA applied.  *Farfalia v. Mutual of Omaha Ins. Co.*, 324 F.3d 971, 975 (8th Cir. 2003) (quoting *Jackson v. Metro Life Ins. Co.*, 303 F.3d 884, 889 (8th Cir. 2002)) (internal quotations and alterations omitted).

   Plaintiff draws the Court's attention to *Ladd v. ITT Corp*, 148 F.3d 753 (7th Cir. 1998), which holds that when an administrative law judge's assessment is in agreement with the unanimous findings of the doctors who examined the plaintiff, then the employee welfare benefit plan's administrator must give some reason for disagreeing with that assessment. 148 F.3d at 755-56.  The *Ladd* court further held that when the claims administrator supports a plaintiff's effort to demonstrate total disability to the SSA, to the extent of providing the plaintiff with legal representation, the employer is estopped from later denying that the plaintiff was totally disabled under an employee welfare plan, especially when the plaintiff's condition had deteriorated since the SSA granted benefits.  *Id*.  However, even if the Court was bound to follow *Ladd*, it can be distinguished.  Here, there are no unanimous findings of doctors who examined Plaintiff.  Instead, there is one opinion from a treating physician and a conflicting opinion from the independent medical examiner who

assessed Planitiff's functional capacity along with other evidence in the record that conflicts with the treating physician's opinion. There is also no evidence here that Plaintiff's condition has worsened since the SSA granted her benefits.

Upon the examination of the administrative record and the consideration of Plaintiff's arguments, the Court finds that LINA's conclusion that, after twenty-four months, Plaintiff did not meet the Disability Plan's definition of "disabled" is reasonable, *i.e.*, supported by substantial evidence.[6] Accordingly, LINA did not abuse its discretion when it refused to continue Plaintiff's disability benefits.

### III. Conflict of Interest

The administrative record here reflects that a conflict of interest exists because LINA was both the Disability Plan administrator and insurer or payer of plan benefits. *See Metropolitan Life Ins. Co. v. Glenn*, ___ U.S. ___, 128 S. Ct. 2343, 2349 (2008). Thus, the Court considers this conflict as one factor among many in determining whether the plan administrator abused its discretion by denying benefits. *Id.* at 2351. The significance of the conflict of interest depends on the circumstances of the particular case. *Id.* In the "combination-of-factors method," the conflict of interest serves as a "tie breaker when the other factors are closely balanced." *Id.* The conflict of interest factor is "more important ... where circumstances suggest a higher likelihood that it affected the benefits decision" and "less important ... where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.*

---

[6]The Court notes that a plan administrator's decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him or her, not that reasonable person *would* have reached that decision. *Jackson v. Metropolitan Life Ins. Co.*, 303 F.3d 884, 888 (8th Cir. 2002).

Here, it is clear that a conflict of interest exists; however, the presence of a conflict of interest does not mandate a finding that the benefits determination was prejudiced by the conflict. The Court considers the conflict as one of many factors and gives it some significance in light of the fact that LINA encouraged Plaintiff to apply for social security disability benefits, received financial benefits because of Plaintiff's success in obtaining social security disability benefits[7], and then disregarded the SSA's finding that she could not work. However, there are other factors, as discussed above, that support the finding that Plaintiff was not disabled under the definition of the Disability Plan. Moreover, the treating physician's opinion that Plaintiff was disabled was not supported by objective medical evidence. The Court is satisfied that LINA has offered a reasonable explanation for its decision and that the decision is supported by substantial evidence. *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir. 2007). Thus, the Court will not disturb LINA's denial of disability benefits to Plaintiff.

## CONCLUSION

For the reasons stated above, the Court finds that LINA did not abuse its discretion in denying Plaintiff's LTD benefits under the Disability Plan. Therefore, Plaintiff's claims against Defendants LINA and Lockheed Martin Corporation Group Benefits Plan are dismissed with prejudice. An order of even date, consistent with this opinion, shall issue.

IT IS SO ORDERED, on this 29th day of September, 2009.

          /s/ Harry F. Barnes
          Hon. Harry F. Barnes
          United States District Judge

---

[7]Plaintiff received a social security payment of $5,705, most of which she had to pay back to LINA to offset the Disability Plan benefits she had received.